In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00053-CR


______________________________




LARRY SAMUEL PALMER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 114th Judicial District Court


Smith County, Texas


Trial Court No. 11-2447-06




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A Smith County jury found Larry Samuel Palmer guilty of delivery of a simulated controlled
substance. See Tex. Health & Safety Code Ann. § 482.002 (Vernon 2003). The trial court
assessed punishment at eighteen months' confinement in a state-jail facility and a $5,000.00 fine. 
The acts giving rise to the prosecution occurred in and around Troup, Texas, which is located in both
Smith and Cherokee Counties. Palmer raises one issue on appeal: that the trial court was without
venue, i.e., that the evidence was insufficient to show that any element of the crime of which he was
convicted was committed in Smith County.

A. Venue

 If there is no specific statute (1) governing the venue of an offense, venue is governed by the
general statute, which provides that "the proper county for the prosecution of offenses is that in
which the offense was committed." Tex. Code Crim. Proc. Ann. art. 13.18 (Vernon 2005). Under
Article 13.18, a charged offense is committed in two counties when some of the elements of the
offense occur in one county and at least one element of the offense occurs in the other county. Jones
v. State, 979 S.W.2d 652, 655 (Tex. Crim. App. 1998) (explaining Wood v. State, 573 S.W.2d 207,
210 (Tex. Crim. App. [Panel Op.] 1978)). When different elements of an offense are committed in
different counties, the offense may be prosecuted in any county in which an element was committed. 
See Wood, 573 S.W.2d at 210-11. The State must prove venue by a preponderance of the evidence. 
Murphy v. State, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003); see also Tex. Code Crim. Proc.
Ann. art. 13.17 (Vernon 2005). 

B. Standard of Review

 In a legal-sufficiency review of a venue determination, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found, by a
preponderance of the evidence, that the offense occurred in the county alleged. Duvall v. State, 189
S.W.3d 828, 830 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd); Vanschoyck v. State, 189 S.W.3d
333 (Tex. App.--Texarkana 2006, pet. ref'd). A factual sufficiency review of the evidence
traditionally (under the reasonable doubt standard) determines, after reviewing all the evidence in
a neutral light, whether the evidence supporting the verdict is outweighed by the great weight and
preponderance of the evidence or is so weak that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006). Here, the burden on the State is only to prove the venue facts by a preponderance of the
evidence, rather than the beyond a reasonable doubt standard. Evidence sufficiently establishes
venue if "from the evidence the jury may reasonably conclude that the offense was committed in the
county alleged." Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). Venue may be
established by direct or circumstantial evidence. Duvall, 189 S.W.3d at 831; Sixta v. State, 875
S.W.2d 17, 18 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd).

C. Elements of the Offense--Delivery of a Simulated Controlled Substance

 The offense is defined as follows:

 (a) A person commits an offense if the person knowingly or intentionally
. . . delivers a simulated controlled substance and the person:


 (1) expressly represents the substance to be a controlled
substance; [or]


 (2) represents the substance to be a controlled substance in a
manner that would lead a reasonable person to believe that the substance is
a controlled substance . . . .


Tex. Health & Safety Code Ann. § 482.002(a). 

 "Simulated controlled substance" is defined as "a substance that is purported to be a
controlled substance, but is chemically different from the controlled substance it is purported to be." 
Tex. Health & Safety Code Ann. § 482.001(4) (Vernon 2003). "Expressly represents," under
Section 482.002(a)(1), requires the use of the specific term defined in the Controlled Substances Act,
e.g., "methamphetamine," and not a slang equivalent. See Grant v. State, 822 S.W.2d 639 (Tex.
Crim. App. 1992); Jenkins v. State, 820 S.W.2d 178 (Tex. Crim. App. 1991); Boykin v. State, 818
S.W.2d 782 (Tex. Crim. App. 1991). "Represents," under Section 482.002(a)(2), is further explained
in Section 482.003, which provides evidentiary rules for determining whether a person has
represented a simulated controlled substance to be a controlled substance in a manner that would
lead a reasonable person to believe the substance was a controlled substance. See Tex. Health &
Safety Code Ann. § 482.003 (Vernon 2003). The statute establishes that, in making the
determination, the court: 

 may consider, in addition to all other logically relevant factors, whether: 


 (1) the simulated controlled substance was packaged in a manner
normally used for the delivery of a controlled substance;


 (2) the delivery or intended delivery included an exchange of or
demand for property as consideration for delivery of the substance and the
amount of the consideration was substantially in excess of the reasonable
value of the simulated controlled substance; and 


 (3) the physical appearance of the finished product containing the
substance was substantially identical to a controlled substance.


Tex. Health & Safety Code Ann. § 482.003(a). 

 Palmer was found to have delivered "by actual transfer" a substance purported to be, by
express representation or in a manner that would lead a reasonable person to believe it was,
methamphetamine. The State presented evidence that the transfer, i.e., the exchange of money for
substance, took place outside Troup in Cherokee County. Nonetheless, the State asserts that the
representation that the substance was methamphetamine took place during negotiations for the sale
at Palmer's house in the Smith County part of Troup. 

 Palmer asserts that the representation that the substance was methamphetamine must be made
contemporaneously with the delivery, which was in Cherokee County. Palmer asserts that myriad
cases require that the representation that a substance is a controlled substance be made
contemporaneously with the sale or transfer of that substance. See Grant, 822 S.W.2d 639; Jenkins,
820 S.W.2d 178; Boykin, 818 S.W.2d 782; Evans v. State, 945 S.W.2d 259 (Tex. App.--Houston
[1st Dist.] 1997, pet. ref'd); Holliman v. State, 692 S.W.2d 120 (Tex. App.--Waco 1985, pet. ref'd). 
We have reviewed Palmer's cited cases and disagree. In all these cases, to the extent the facts
indicate any sense of the timing of the delivery and representation, these elements seem to have
occurred at least relatively contemporaneously. But in none of these cases is the timing of the
elements in issue. None of Palmer's cited cases analyzes, let alone requires, contemporaneity
between the representation and the delivery. 

 Neither is contemporaneity required under the plain language of the statute. See Tex.
Health & Safety Code Ann. § 482.002(a). We are also not persuaded by Palmer's contention that
the chapter's nonexclusive evidentiary rules (see Tex. Health & Safety Code Ann. § 482.003)
mandate that the representation and delivery elements be contemporaneous. While it is true that the
first and third considerations (the packaging and physical appearance of the substance actually
transferred) cannot be observed until actual transfer, the second consideration (exchange of or
demand for property as consideration) does not require actual transfer at all. See Tex. Health &
Safety Code Ann. § 482.003(a). This is consistent with the statutory definition of "delivery,"
which is not limited to physical transfer and "includes offering to sell a simulated controlled
substance." Tex. Health & Safety Code Ann. § 482.001(2) (Vernon 2003). To interpret the
statute to mean that a representation that a substance is a controlled substance may only be made
contemporaneously with actual transfer of the simulated controlled substance would create, rather
than resolve, an ambiguity in the statute that otherwise defines the offense in such a way as to not
require actual transfer. Where a statute is clear and unambiguous, the Legislature must be
understood to mean what it has expressed, and it is not for the courts to add or subtract from the
statute. Boykin, 818 S.W.2d 782. We decline to add a contemporaneity requirement to the statute.

 Thus, if sufficient evidence supports that Palmer made a representation in Smith County that
a simulated controlled substance was a controlled substance--either expressly or in a manner that
would lead a reasonable person to believe the substance was a controlled substance--then venue in
Smith County was appropriate.

D. The Evidence

 Steve Henry, a detective with the Smith County Sheriff's Department, testified that on July
20, 2006, he and a confidential informant (CI) went to Palmer's house on the Smith County side of
Troup, Texas. Henry remained in the car while the CI spoke with Palmer. Palmer and the CI's brief
conversation was recorded, with video and audio, on a camera concealed in a button. The State
played the DVD of the July 20 meeting for the jury. (2) 

 The State commented at the trial while the DVD was playing: "[y]ou hear the defendant
stating that he could basically get an eight ball -- he can get an eight ball for [the CI], isn't that
correct?" Detective Henry agreed. Henry explained that, "[w]ith individuals that are in the drug
industry," an "eight ball" is a common name for "3.5 grams of methamphetamine." Henry also stated
that, based on his training and experience, he reasonably believed that Palmer was going to be
producing methamphetamine based on the "offer to sell that dope" on July 20. 

 The CI testified that on July 20, he received money from Detective Henry to try to purchase
drugs from Palmer but that he was not able to purchase on that day. The CI agreed that on July 20,
he  and  Palmer  talked  about  setting  up  a  deal  to  buy  methamphetamine.  The  CI  stated  that
on July 20, Palmer "said a gram was, like, 100 to 8 bucks. And he couldn't get -- could buy an eight
ball for $250; and I didn't have enough money to get an eight ball that day" and Palmer did not have
the "eight ball" at that time, either. The CI also said that on July 20, Palmer offered to sell him "an
eight ball for 250 bucks." 

 Henry and the CI returned to Palmer's house in Smith County on July 25, 2006. Again,
Henry stayed in the car while the CI went to the house and spoke with Palmer. A second DVD, of
the meeting at Palmer's house on July 25, was played for the jury, and Henry again commented as
it played. (3) 

 Henry related that on the July 25 DVD, the CI said, "[w]e got the money for the eight ball,"
and Palmer replied it would take forty-five minutes to get an eight ball. The CI said that he engaged
in discussions about the methamphetamine and "ice" on July 25 at Palmer's home. The CI agreed
that Palmer, at his home, represented that the substance he was going to purchase was
methamphetamine by referring to it as an "eight ball" and "ice." The CI also testified that based on
Palmer's representations and the CI's knowledge, the CI believed the substance they were discussing
was methamphetamine. The CI also said that he is familiar "with some of the suppliers" in the Troup
area and with "Palmer as being a supplier." 

 The DVDs shown to the jury establish that Palmer, in Smith County, first established a price
of about $250.00 for an "eight ball" and later agreed to meet to provide a "ball." The jury heard
testimony from the CI and Detective Henry that the term "eight ball" carries, in the drug community,
a particular and common meaning: 3.5 grams of methamphetamine. The jury heard the testimony
of Henry and the CI that, based on Palmer's representations in Smith County, they believed he was
representing that he would deliver a controlled substance. The fact that further representations were
also made in Cherokee County is of no consequence. See Wood, 573 S.W.2d at 210 (a single
element can occur in several counties); Tucker v. State, 751 S.W.2d 919, 924 (Tex. App.--Fort
Worth 1988, writ ref'd) (continuing transaction, in which an offense is committed across several
counties raises venue in one of those counties).

 Viewing the evidence in the light most favorable to the verdict, a rational jury could have
found, by a preponderance of the evidence, that the representation element of the offense occurred
in Smith County. Viewing all the evidence in a neutral light, we cannot say the evidence supporting
venue in Smith County is outweighed by the great weight and preponderance of the evidence or is
so weak that the finding of venue in Smith County is clearly wrong or manifestly unjust. The jury
could reasonably conclude, by a preponderance of the evidence, that the representation element of
the offense was committed in the county alleged. We overrule the point of error. 

 We affirm the judgment.


 Bailey C. Moseley

 Justice


Date Submitted: November 21, 2007

Date Decided: December 5, 2007


Do Not Publish

1. This is not a case in which the exact location within the State of Texas where the offense
occurred cannot be readily identifiable, thus allowing prosecution in the county of the defendant's
residence. See Tex. Code Crim. Proc. Ann. art. 13.19 (Vernon 2005). Neither is it a case where
the offense occurred on, or within 400 yards of, a county line. See, e.g., Tex. Code Crim. Proc.
Ann. art. 13.04 (Vernon 2005) (applicable to an "offense committed on the boundaries of two or
more counties, or within four hundred yards thereof"). 
2. The DVD has poor audio and video quality. Nonetheless, our review of the DVD reveals
that the DVD depicts a markedly different exchange than that testified to by the State's witnesses. 
Our review of this DVD reveals that the CI asked about "coke"; Palmer responded that the CI had
contacted him about "weed." Palmer stated he did not know how much a "G" costs. The CI asked
how much "an eight ball" would cost and Palmer replied, "normally costs 250. Could be 3-0. I don't
know." 
3. The second DVD also has poor audio and video quality and, again, our review reveals a
different exchange than that testified to by the State's witnesses. In our review of the July 25 DVD,
the CI states, "I'm trying to get a ball." Palmer replies, "Oh really? When do you need it?" The CI
answers, "Now." Palmer states, "It'll take about 45 minutes." 


show:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 mso-themecolor:hyperlink;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") eh1;
 mso-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") h1;
 mso-even-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") ef1;
 mso-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") f1;
 mso-first-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") fh1;
 mso-first-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") eh1;
 mso-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") h1;
 mso-even-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") ef1;
 mso-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") f2;
 mso-first-header:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") fh1;
 mso-first-footer:url("06-10-085-CR%20Hernandez%20v.%20State%20reh%27g%20READING%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00085-CR

                                                ______________________________

 

 

                       EDUARDO GARDUNO HERNANDEZ,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2008-C-0283

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Eduardo
Garduno Hernandez was sentenced to ten years imprisonment following his
conviction for aggravated kidnapping while using or exhibiting a deadly weapon.
 Tex.
Penal Code Ann. § 20.04(b) (Vernon 2003).  Hernandez argues that the evidence is legally
insufficient[1]
to support his conviction because the undisputed evidence demonstrates that the
weapon alleged in his indictment to have been employed was a toy, which was
neither used nor intended to be used as a deadly weapon.  We agree with Hernandez and, therefore, modify
the judgment to reflect his conviction of the lesser-included offense of
kidnapping.  Tex. Penal Code Ann. § 20.03 (Vernon 2003).  Because of the modification, we must reverse
the punishment phase of the trial and remand for a new trial on
punishment.  

I.          Factual and Procedural
History 

            As Angela Bush sat
in her bed, working on her laptop computer beside her sleeping husband, a masked intruder stole into her
bedroom and watched.  When she closed
the lid, thats when the gun came across the top of the computer just right in
my face.  And I screamed really loud.  Bushs husband, who suffers from paralysis,
was instantly awakened by his wifes scream and tri[ed] to sit up and get in
front of her, but was helpless.  The
intruder threatened the terrified couple with the gun for over three hours
before finally leaving, stealing $299.00 in cash, a blank check, and several
pain pills from the couple.  As soon as
their tormenter left, Bush ran for the telephone and dialed 9-1-1, describing
the intruder to the emergency operator as a male with his face painted and
wearing a red bandana. 

            Officer
Hilton Wayne Poindexter arrived at the Bush home, secured the perimeter, and
began to search for the intruder by searching the county roads or the
different roads in and around the residence. 
A man on the side of a road attracted Poindexters attention and
reported sighting a male accessorized with face paint, a toboggan, red
bandanas, gloves, and a gun.  Poindexter
found Hernandez (who admitted to possessing a gun) in this bizarre
disguise.  During Hernandezs arrest,
Poindexter recovered from him the Bushes money, their blank check, and a
realistic-looking toy gun, which bore the words Made in China on one side and
Yesheng Toys on the other. 

            The States
indictment alleged Hernandez committed aggravated kidnapping in that he

did then and there intentionally or knowingly
abduct Angela Bush, by restricting the movements of said Angela Bush, without
[her] consent so as to interfere substantially with her liberty by confining
her with intent to prevent her liberation, by using or threatening to use
deadly force, namely by displaying a pistol, and the defendant did then and
there use or exhibit a deadly weapon, to-wit:  a pistol, during the commission of said offense
. . . . 

 

            Hernandez
claims the evidence is legally insufficient to demonstrate that he used or
exhibited a deadly weapon during the commission of the offense.  We agree. 

II.        Standard
of Review

            In evaluating a legal sufficiency challenge,
we apply the Jackson standard as explained in Brooks.  

[T]he relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.


 

Jackson, 443 U.S. at 319. 

            Here,
we consider the evidence in the light most favorable to the verdict to
determine whether any rational jury could have found the essential elements of
aggravated kidnapping beyond a reasonable doubt.  Sanders v. State, 119 S.W.3d 818, 820
(Tex. Crim. App. 2003).  Legal
sufficiency is measured by the elements of the offense as defined by a
hypothetically-correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v.
State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).   

            Under
a hypothetically-correct charge in this case, the jury was required to find,
beyond a reasonable doubt, that Hernandez intentionally or knowingly
abduct[ed] another person and use[d] or exhibit[ed] a deadly weapon during the
commission of the offense.  Tex. Penal Code Ann. § 20.04(b) (Vernon
2003).  

III.       The
Toy Gun Was Not a Deadly Weapon in this Case 

            It is undisputed that the gun used
in the commission of the offense was not a gun but, rather, a toy.[2]  Under the Texas Penal Code, a deadly weapon
is (A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or (B) anything that in
the manner of its use or intended use is capable of causing death or serious
bodily injury.  Tex. Penal Code Ann. § 1.07(17) (Vernon Supp. 2010).  Since this toy gun was not designed for and
could not be adapted for the purpose of infliction of death or bodily injury,
the State relies on subpart B of the deadly weapon definition. 

            Objects
that are not usually considered dangerous weapons may become so, depending on
the manner in which they are used during the commission of an offense.  Thomas v. State, 821 S.W.2d 616, 620
(Tex. Crim. App. 1991).  There are myriad
items not designed as weaponry whichby their usethe courts of this State
have deemed to have been employed as deadly weapons.[3]  The State cites to testimony from Poindexter
and Officer Ronnie Wesley Endsley that the toy is a hard plastic replica with
sharp edges.  Being hard plastic, it
could really do a number on them.[4]  Although light in weight, they believed the
gun could be used to hit Bush about the face and eye, and concluded it was a
deadly weapon capable of causing bodily injury. 

            However,
[c]apability is evaluated based on the circumstances that existed at the time
of the offense.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
The toy gun was neither used to strike Bush, nor was there any evidence
suggesting either that Hernandez threatened to use or intended to use the toy
in that manner.  There was no testimony
from either Bush or her husband that Hernandez raised the gun as if he would
strike them or otherwise threatened to strike them with the gun.  Bush and her husband indicated only that
Hernandez pointed the gun at them as if he was going to shoot them with (what
eventually turned out to be a toy) gun. 
Because the use and manner of intended use (i.e., pointing and
threatening as if to shoot) was not a use of the toy capable of causing serious
bodily injury or death, we find such evidence was legally insufficient to allow
a jury to infer the toy was a deadly weapon. 
Cortez v. State, 732 S.W.2d 713, 715 (Tex. App.Corpus Christi
1987, no pet.) (testimony regarding use of pistol insufficient where the pistol
was toy).  We sustain Hernandezs point
of error. 

            The
State urges this Court to reform the trial courts judgment to reflect a
conviction for kidnapping.   Where, as
here, the jury charge includes a lesser-included offense, we may modify a
judgment of conviction to reflect conviction of the lesser-included offense if
we find that the evidence is legally sufficient to support the lesser-included
offense, but insufficient to support conviction of the offense for which the
defendant was convicted.  Herrin v.
State, 125 S.W.3d 436, 44345 (Tex. Crim. App. 2002); Lackey v. State,
290 S.W.3d 912, 920 (Tex. App.Texarkana 2009, pet. refd).  Kidnapping is a lesser-included
offense of aggravated kidnapping.  Schweinle v. State,[5] 915
S.W.2d 17, 19 (Tex. Crim. App. 1996) (per curiam); Ex parte Gutierrez, 600 S.W.2d 933, 935 (Tex. Crim. App.
1980); see Tex. Penal Code Ann. § 20.03 (Vernon Supp. 2009).  We examine the evidence to determine whether
it was legally sufficient to establish a conviction for kidnapping.  

            A
person commits the offense of kidnapping if he intentionally or knowingly
abducts another person.  Tex. Penal Code Ann. § 20.03(a).  Abduct means to restrain a person with intent to
prevent his liberation by:  (A) secreting
or holding him in a place where he is not likely to be found; or (B) using or
threatening to use deadly force.  Tex. Penal Code Ann. § 20.01(2) (Vernon
Supp. 2010).  Since Bush was restrained[6] in her
home, a place where she was likely to be found, in order to convict of
aggravated kidnapping, the State was required to prove that Hernandez used or
threatened to use deadly force, namely by displaying a pistol as charged in
the indictment.  Once alleged, the quoted
portion of the indictment had to be proved. 
Curry v. State, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000).   

            There
is no evidence in the record that Hernandez actually used deadly force.  On the other hand, Hernandez aimed the ersatz
pistol in a manner which suggested that he was threatening to shoot.  Bush was unaware that the thing being pointed
at her was a toy, but truly believed the object to be a real gun; she testified
that she was afraid for her life.  This
is evidence, which a rational jury could consider, supporting a finding that
Hernandez threatened to use deadly force by displaying a pistol.[7]  We find the evidence was legally sufficient
to show that Hernandez restrained Bush with intent to prevent her liberation by
threatening to use deadly force.  With
this finding, we modify the trial courts judgment to reflect the
conviction of Hernandez of the lesser-included offense of kidnapping.  We affirm the trial courts judgment as
modified and remand for a new trial only on the issue of punishment.  Tex. R. App. P. 21.9.  

IV.       Conclusion


            We modify the trial courts judgment
to reflect conviction of the lesser-included offense of kidnapping.  We affirm the judgment of conviction as
modified.  The judgment on punishment is
reversed, and we remand the case to the trial court for a new trial on punishment.


 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          October 25, 2010

Date Decided:             December 3, 2010

 

Publish

 

 

OPINION
ON REHEARING

 

            In
the above-captioned case, we modified the aggravated kidnapping conviction of
Eduardo Garduno Hernandez to reflect conviction of the lesser-included offense
of kidnapping and remanded the case to the trial court for a determination of
the punishment for that offense.

            The
State of Texas has moved that we rehear the matter and confirm the conviction
of Hernandez.[8]  In its motion, the State points out that the
ten-year sentence which Hernandez received is within the punishment range of
kidnapping, a third-degree felony (which has a penalty range of imprisonment
for a term of not less than two or more than ten years, plus a fine not to
exceed $10,000.00).  Tex. Penal Code Ann. § 20.03(c) (Vernon
2003).

            Although
we understand the logic employed by the State, this is an action which we
cannot take.  Despite the fact that the
punishment previously meted out to Hernandez at trial on his conviction for
aggravated kidnapping (a first-degree felony) falls within the permissible
range of punishment for kidnapping (a third-degree felony), we cannot assume
that the trial court would assess the same punishment on the conviction of a
third-degree felony as it would on the conviction of a first-degree felony.  Lockett v. State, 874 S.W.2d 810, 818
(Tex. App.Dallas 1994, pet. refd); see Jones v. State, 300 S.W.3d 93, 101 (Tex.
App.Texarkana 2009, no pet.); Garrett v. State, 161 S.W.3d 664,
672 (Tex. App.Fort Worth 2005, pet. refd).

            We
deny the motion for rehearing.

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date:   December
29, 2010

 

Publish











[1]Hernandez
also argues the evidence was factually insufficient to support his conviction. With
Judge Cochran joining the lead opinion, authoring a concurring opinion, and
Judge Womack concurring with the lead opinion and joining the concurrence, in Brooks
v. State, No. PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim. App. Oct.
6, 2010) (4-1-4 decision), a plurality of the Texas Court of Criminal Appeals
abolished the factual sufficiency review established by Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.  The plurality and Judge Womack agreed that
the Jackson v. Virginia legal sufficiency standard is the only standard
that a reviewing court should apply in determining whether the evidence is
sufficient to support each element of a criminal offense that the State is
required to prove beyond a reasonable doubt. 
Brooks, 2010 WL
3894613, at **1, 14.  Since the Texas
Court of Criminal Appeals has abolished factual sufficiency review, we need not
address the defendants challenge(s) to the factual sufficiency of the
evidence.





[2]All
witnesses testified that the toy gun was the one used during the commission of
the offense.  





[3]Stanul v. State, 870 S.W.2d 329 (Tex. App.Austin
1994, pet. dismd, pet. refd [2 pets.]) (defendant used floor as deadly weapon
by striking victims head against it); Lozano
v. State, 860 S.W.2d 152 (Tex. App.Austin 1993, pet. refd) (defendant
used lighter as deadly weapon by using it to start a fire); Enriquez v. State, 826 S.W.2d 191 (Tex.
App.El Paso 1992, no pet.) (defendant used soft drink bottle as deadly weapon
by striking victim with it); Escobar v.
State, 799 S.W.2d 502 (Tex. App.Corpus Christi 1990, pet. refd)
(baseball bat used to bludgeon victim constituted deadly weapon); Cooper v. State, 773 S.W.2d 749 (Tex.
App.Corpus Christi 1989, no pet.) (defendant used hands as a deadly weapon by
dropping infant to floor); Rice v. State,
771 S.W.2d 599 (Tex. App.Houston [14th Dist.] 1989, no pet.) (defendant used
gasoline as deadly weapon by pouring it over victim and igniting it); Johnson v. State, 770 S.W.2d 72 (Tex. App.Texarkana
1989) (defendant used hands and feet as deadly weapons by beating and kicking
victim to death), affd, 815 S.W.2d
707 (Tex. Crim. App. 1991); Roberts v.
State, 766 S.W.2d 578 (Tex. App.Austin 1989, no pet.) (defendant used
truck as deadly weapon in colliding with car, injuring and killing occupants); Harper v. State, 753 S.W.2d 516 (Tex. App.Houston
[1st Dist.] 1988, pet. refd) (defendant used rope or cord as deadly weapon by
tying it around victims neck, restricting her breathing); Shockley v. State, 747 S.W.2d 470 (Tex. App.Houston [1st Dist.]
1988, no pet.) (defendant used fabric or hands as deadly weapon by strangling
victim); Cervantes v. State, 706
S.W.2d 685 (Tex. App.Houston [14th Dist.] 1986, no pet.) (defendant used
board as deadly weapon by striking victim with it); Garza v. State, 695 S.W.2d 726 (Tex. App.Dallas 1985) (by placing
broken metal belt buckle in his hand when striking at officer, defendant used
the belt buckle as deadly weapon), affd,
725 S.W.2d 256 (Tex. Crim. App. 1987); Terry
v. State, 672 S.W.2d 236 (Tex. App.Waco 1983) (defendant used plastic bag
as weapon by placing it over victims head, suffocating her), revd in part on other grounds, 692
S.W.2d 496 (Tex. Crim. App. 1985).

 





[4]The
officers also testified that Bushs husband was on blood thinner, and if hit
with the gun, could endure a lot of bleeding, causing serious bodily injury or
death.  Because Hernandez was not
indicted for commission of any crime against Bushs husband, we need not
consider this evidence. 





[5]At
the time the Texas Court of Criminal Appeals decided the Schweinle case, the offense now known as unlawful restraint was
called false imprisonment.  See Schweinle,
915 S.W.2d at 19.

 





[6]Restrain
means to restrict a persons movements without consent, so as to interfere
substantially with the persons liberty, . . . by confining the person.  Tex. Penal Code Ann. § 20.01(1)
(Vernon Supp. 2010).  





[7]See Gallagher
v. State, No. 05-06-01010-CR, 2007 WL 3105642, at **12 (Tex. App.Dallas
Oct. 25, 2007, no pet.) (not designated for publication) (finding defendant
threatened deadly force by using a soft-pellet air pistol in a manner in which
victim feared for her life).  Although
this unpublished case has no precedential value, we may take guidance from it as
an aid in developing reasoning that may be employed.  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.Amarillo 2003, pet. refd).





[8]Although
the argument seems to follow the rationale that the State seeks to maintain the
finding of guilt concerning kidnapping as modified on appeal and impose a
ten-year sentence for that crime, the State pleads that the conviction and
sentence should be in all things confirmed.