**Chuckie Lepold HARPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00759–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 7, 1988.

James Stafford, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Carol Cameron, Asst. Dist. Atty., Harris County, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a conviction for aggravated robbery. Appellant entered a plea of not guilty. A jury found appellant guilty as charged. Appellant entered a plea of true to the enhancement paragraph. The court found the enhancement true and assessed punishment at 45 years confinement.

In eight points of error, appellant challenges the sufficiency of the evidence and the court's rulings with respect to election of the paragraph of the indictment upon which it would proceed, appellant's objection to the jury charge, and the appellant's motion for discovery.

According to the testimony, the complainant, Augustina Brown, who was home alone, heard a knock on her front door at 8:40 a.m. She looked out the window, saw no cars in her driveway, and decided not to answer the door. Appellant, who had been a friend of her sons for 10 years, walked through the front door. She greeted him, but he did not answer.

While in the front hall, appellant put his arm around Mrs. Brown's neck, choking her, and dragged her through the hallway and back to the kitchen. Appellant told Mrs. Brown to write him a check for $600. She got her checkbook from her purse on the kitchen counter. Appellant then took a rope or cord from his pocket and wrapped it around her neck. Mrs. Brown testified that she was afraid and that her hands were shaking. She filled in the date and amount and signed the check. As she wrote, appellant reached over to the sink and picked up a steak knife and held it to her back.

Mrs. Brown remembers that after writing the check, she fell back toward appellant. But she remembered nothing else until she regained consciousness and found herself on the bathroom floor. She felt debris, which turned out to be broken glass, on her face. Her head hurt and there was blood on the floor. She got up and called the police and her son, Steven.

The head teller for Mrs. Brown's bank testified that on that same date, appellant attempted to cash a check made out to "Chuckie Harper" on Mrs. Brown's account. The teller refused to cash the check because the signature on the check differed significantly from the signature card, and the name of the payee was written in a different handwriting from the rest of the check. She made an in-court identification of appellant as the person who presented the check to her.

In his first four points of error, appellant contends that the evidence was insufficient to support a finding that the rope or cord, the decanter, or the knife were deadly weapons, and that appellant used or exhibited the decanter to threaten or place Mrs. Brown in fear of imminent bodily injury or death. None of the items is a deadly weapon per se; therefore, the evidence must show that the manner of their use or intended use was capable of causing death or serious bodily injury. Tex.Penal Code Ann. sec. 1.07(a)(11)(B) (Vernon 1974).

Appellant argues that: (1) the rope or cord was never recovered and was not seen by Mrs. Brown; (2) that it could not be described to the officer; (3) that there was no evidence of its length, width, or strength; and (4) that the officer could only testify generally that a rope or cord long

enough to be placed around a person's neck was a deadly weapon.

Mrs. Brown did not testify that she saw the rope or cord. But she did testify that appellant pulled the rope or cord from his pocket and put it around her neck. It is therefore reasonable to infer that she saw it when he pulled it from his pocket. Furthermore, she felt it around her neck, and it was tight enough interfere with her breathing. She also felt it with her finger as she attempted to relieve some of the pressure while writing the check. Appellant concedes in his brief that the evidence was clear that the rope was strong enough to restrain Mrs. Brown. Mrs. Brown's testimony was corroborated by the police officer who testified that when he responded to her call, he saw a red chafe mark around her neck.

■ Although wounds need not be inflicted, injuries or wounds inflicted upon a person are a factor to consider in determining whether a weapon qualifies as a deadly weapon. *Denham v. State*, 574 S.W.2d 129, 131–32 (Tex.Crim.App.1978). In determining the deadliness of a weapon, the jury may consider all of the facts of the case. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim.App.1983). Viewing the evidence in the light most favorable to the verdict, the evidence is sufficient to show that the rope or cord was a deadly weapon.

In challenging the sufficiency of the evidence to show that the knife was a deadly weapon, appellant argues that independent proof must be offered regarding the knife's capability to produce a deadly or a serious wound and its use in such a purpose. *Blain*, 647 S.W.2d at 294.

■ Expert witness testimony is not required before a knife can be determined to be a deadly weapon. *Id.* A knife similar to the knife used in the robbery was introduced into evidence at the trial. Mrs. Brown testified that she could not produce the same knife that was used in the robbery because appellant had picked up one of a set of six steak knives, and she did not know, at this time, which knife he had picked up. A police officer testified that the knife displayed to the jury was capable of inflicting serious bodily injury or death. Thus, there was sufficient evidence for the jury to find that the knife used during the robbery was a deadly weapon.

■ Appellant contends that the evidence is insufficient to show that the decanter was a deadly weapon or that it was used or exhibited to threaten or place Mrs. Brown in fear of bodily injury or death. He points out that Mrs. Brown testified that she lost consciousness after writing the check in the kitchen, and did not know anything until she woke up on the floor of the bathroom with her head bleeding and broken glass on her face. She did not know how the decanter had been broken, did not see appellant touch the decanter, and had no knowledge of how she got the wound on her head. Appellant argues that because of these facts, it cannot be said that she was threatened or placed in fear by the decanter.

The record does not make it clear what caused Mrs. Brown's unconsciousness. Although she awakened in the bathroom, and blood and broken glass were found there, blood was also found in other rooms of the house including the kitchen and the hallway. The glass stopper and the broken neck of the decanter were also found in the bathroom. It was reasonable for the jury to conclude from the cut on Mrs. Brown's head and the broken glass that appellant struck her with the decanter. It was also reasonable for the jury to conclude that a glass decanter, when used in such a manner, was a deadly weapon. *See Daugherty v. State*, 153 Tex.Crim. 8, 216 S.W.2d 222, 223 (1948) (evidence sufficient to sustain conviction for assault with intent to murder where the weapon was a broken quart bottle). Although the record does not show that appellant exhibited the decanter to Mrs. Brown or threatened to hit her with it, there is sufficient evidence to conclude that the decanter was actually used to assault Mrs. Brown and that it was responsible for some of her injuries. Mrs. Brown spent several days in the hospital as a result of these injuries. Thus, the evidence is sufficient to support a jury finding that the

decanter was a deadly weapon and was used in the robbery.

Appellant's points of error one through four are overruled.

In his fifth point of error, appellant contends that the trial court erred in failing to require the State to elect upon which paragraph of the indictment it intended to proceed. The indictment contained three separate paragraphs, each alleging the exhibition or use of a different deadly weapon.

■■■ A count in an indictment may contain separate paragraphs charging the same offense. *Foster v. State*, 661 S.W.2d 205, 208 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd); Tex.Code Crim.P.Ann. art. 21.24(b) (Vernon Supp.1988). Where the State establishes an interrelated series of acts or transactions in order to show one completed offense, no election is required. *Crocker v. State*, 573 S.W.2d 190, 199 (Tex. Crim.App.1978).

In this case, there was evidence to support each of the separate paragraphs, which stated an interrelated series of acts showing one completed offense. Thus, no election was required.

Appellant's fifth point of error is overruled.

In his sixth point of error, appellant contends that the trial court erred in overruling his objection to the jury charge in which he argued that the State failed to produce evidence to establish that the rope and the decanter were deadly weapons.

In light of our finding that there was sufficient evidence to support a jury finding that the rope and decanter were deadly weapons, there was clearly sufficient evidence to permit submitting these issues to the jury, and appellant's objections were properly overruled.

Appellant's sixth point of error is overruled.

■■ In his seventh and eighth points of error, appellant contends that the trial court erred in not permitting the discovery of the victim impact statement. Appellant argues that the statement contained "grossly inflated values" for items that were damaged in the robbery. He argues that the statement contains exculpatory material because it casts doubt on the honesty of the complaining witness.

A victim impact statement is subject to discovery before the testimony of the victim is taken only if the court determines that the statement contains exculpatory material. Tex.Code Crim.P.Ann. art. 56.-03(g) (Vernon Supp.1988).

Appellant did not request the trial court to determine whether the statement contained exculpatory material. The record indicates that several months before trial, appellant's counsel had been permitted to read the victim impact statement, which was made by Mrs. Brown's son. On the day of trial, counsel asked the court to allow her to "look over" the statement because she thought it might contain some prior inconsistent statements. The court said that if the person who made the statement testified, the court would allow counsel to examine the statement. Mrs. Brown's son did not testify at the trial.

The victim impact statement is not a part of the record on appeal, and there is nothing in the record to indicate that the statement contains any exculpatory material.

Appellant's seventh and eighth points error are overruled.

The judgment of the trial court is affirmed.