**Edward Rivera ESCOBAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–89–187–CR, 13–89–188–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 8, 1990.

Rehearing Overruled Nov. 29, 1990.

Ricardo Flores, Edinburg, Joseph A. Connors, McAllen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and KEYS and SEERDEN, JJ.

OPINION

KEYS, Justice.

Appellant Edward Rivera Escobar, at a joint trial with co-defendant Amancio Flores, III, was found guilty by a jury of the murder of Jaime Villanueva and of the attempted murder of Jose Luis Villanueva. The jury assessed punishment for the murder at 99 years in T.D.C. and a $10,000 fine, and for the attempted murder at 20 years in T.D.C. and a $10,000 fine. The jury also made affirmative findings on use of a deadly weapon in both offenses. Appellant brings twenty-two points of error on appeal. We affirm both convictions.

Appellant's own statement, admitted into evidence without objection at trial, showed the following sequence of events. Appellant had been drinking beer with a group of his friends at Andy Flores' house in Lopezville, Texas, on the night that both offenses occurred. Shortly after midnight, appellant and Andy Flores went to Rick's Quick Stop, a nearby convenience store which had already closed for the night. On their way back, the two helped a man push his car out of a ditch. When they arrived back at Flores' house, Andy Flores told the others that the man they had helped had called him a "hoto". The group then decided to start a fight with this man. "We all started saying let's go back and beat him up. Erasmo Flores then grabbed a baseball bat. Hector Moreno grabbed a car jack. We all ran back to Rick's Quick Stop."

When the group found a car that looked like the one Andy Flores and the appellant had helped push out of the ditch, Freddy Flores then began to break its windows. The first victim then came running from a house next to the convenience store, asking

the group in Spanish what was going on, and pushed Abel Gamez away from the car. Erasmo Flores then hit the first victim on the head with the baseball bat, and he fell to the ground.

A second victim then came running from the house and hit Erasmo Flores to the ground, causing him to drop the baseball bat. One of the group then kicked the second victim to the ground, at which time appellant picked up the baseball bat and hit the second victim on the head with it. Others then kicked him in the head. A supposed third victim then arrived on the scene and was kicked to the ground by Mando Gamez as appellant hit him in the stomach with the bat. While the others in the group continued to hit the victims as they lay on the ground, appellant took the baseball bat and ran back to Flores' house. About two minutes later, the rest of the group followed. At the end of his statement appellant commented that, "I don't know the names of the guys that we beat up and I don't think that I had ever seen them before that night."

Several persons witnessed either the fight or the events surrounding it, and testified consistently with appellant's rendition. Among them, Sylvestre Garcia and Eduardo De La Garza, who had been driving through Lopezville at the time of the incident, each testified that they saw three unidentified males hitting the victims. De La Garza elaborated that he had seen one of the men holding a "wooden baseball bat." After unsuccessfully chasing one of the assailants, Garcia and De La Garza had stopped to render aid to the victims.

Jose Luis Villanueva testified that on the night in question he, with his brother Jaime following, walked over to Jaime's car when they noticed a group of men beating on it. Jose Luis saw three men, one of whom had a bat and started swinging it at him. After being hit a number of times with the bat, Jose Luis did not remember anything more, nor did he see who beat up Jaime. Jose Luis did, however, recognize the person who assaulted him with a bat as the second man from the left in a newspaper photograph from the Edinburg Daily Review which was admitted at trial. Appellant was later identified by a local sheriff's office investigator as the second man from the left in the photograph.

Dr. Omar Garza testified that he treated Jaime and Jose Luis Villanueva at the Edinburg General Hospital emergency room immediately after the assault. Jaime suffered several fractures to his skull and was pronounced brain dead three days later, though he was kept artificially alive for several more days. Dr. Garza determined that Jaime's cause of death was severe brain injury caused by blunt, very hard trauma to his head, which could have been caused by some kind of metal or wooden object, but probably not merely kicks to the head. Jose Luis also suffered injuries to the head, including blood clots inside his brain that were surgically removed. When first admitted to the hospital, Jose Luis was also in danger of dying from his brain injuries.

Dr. Ruben Santos, the pathologist who performed Jaime's autopsy, testified that the cause of death was a blunt force injury to the head. He found multiple fractures to the skull produced by a heavy, blunt instrument, not a sharp one. There were several blows, which could have been produced by a bat, a two-by-four, or a car jack. These injuries would be aggravated by later repeatedly kicking the victim in the head.

Appellant's first through twentieth points of error all challenge the sufficiency of the evidence to support his twin convictions. His first three points complain that the evidence was insufficient to show that he was the primary actor who caused Jaime Villanueva's death by striking him with a wooden stick, a car jack, or his foot. Similarly, points eleven through thirteen challenge sufficiency to show that he was the primary actor who committed the clearly dangerous act of striking Jose Luis Villanueva with a wooden stick, a car jack, or his foot. Points of error four through ten challenge sufficiency to support appellant's criminal responsibility for the conduct of his companions in causing the death of Jaime Villanueva, and points fourteen

through twenty challenge sufficiency to support his criminal responsibility for their conduct in striking Jose Luis Villanueva with a wooden stick, a car jack, or his foot.[1]

The appellant was indicted and the court consistently charged the jury under both cases in accordance with the provisions of Tex.Penal Code Ann. § 19.02(a)(2) (Vernon 1989) that appellant must have "intend[ed] to cause serious bodily injury and commits an act clearly dangerous to human life." In the murder case the acts of appellant and his group resulted in the death of Jaime Villanueva, constituting the offense of murder under section 19.02. In the attempted murder case their acts inflicted life-threatening wounds upon Jose Luis Villanueva, but failed to kill him, which allowed conviction only of an attempted offense under Tex.Penal Code Ann. § 15.01 (Vernon Supp.1990). In addition, the trial court properly instructed the jury on the law of parties and applied it to the facts of the present case for both the murder and the attempted murder, allowing both convictions to be sustained based either on the appellant's own conduct or the conduct of others within his group for which he may be held legally responsible under the law of parties. We will therefore discuss together the arguments made by appellant under points of error one through twenty.

■ In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

Appellant initially complains that there was no evidence that the bat he used to strike the victims was a "wooden stick", as alleged in the indictments and carried over into the charges to the jury on both offenses. Thus, appellant argues, the failure to prove a descriptive averment concerning the means by which he was alleged to have committed the offenses renders the evidence insufficient to sustain his convictions. *See Hunt v. State*, 603 S.W.2d 865 (Tex.Crim.App.1980); *Blevins v. State*, 672 S.W.2d 828, 830 (Tex.App.—Corpus Christi 1984, no pet.).

■ Sufficiency of the evidence is reviewed by comparing the evidence to the indictment as incorporated into the charge. *Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim.App.1984); *Benson v. State*, 661 S.W.2d 708, 715 (Tex.Crim.App.1982). The evidence shows that fatal and near fatal injuries were inflicted upon the victims by members of appellant's group striking them with a blunt object, aggravated by repeatedly kicking them in the head. The jury charge describes, and thus limits, the blunt object to be either a "car jack" or a "wooden stick."[2] The evidence suggests that both a baseball bat and a car jack were carried to the scene of the crime, that the baseball bat was used on both victims, and that the car jack was used on at least one of the victims, though which is unclear. Therefore the evidence would not have been sufficient to show either the murder or the attempted murder without proof of the baseball bat as one of the instruments which was used to inflict the fatal and near fatal injuries.

Although appellant's own statement mentions only a baseball bat without specifying its composition, witness De La Garza specifically testified that the bat he saw being used in the assault that night was a "wooden baseball bat." We may infer,

---

**1.** Curiously, in these points of error appellant refers to the cause number and jury charge associated with the attempted murder offense against Jose Luis Villanueva, yet he repeats his earlier challenge to the sufficiency of the evidence to show that he intentionally caused the death of Jaime Villanueva. Because there is no logical reason for appellant to repeat his earlier points in this manner, we infer that appellant intended to challenge the sufficiency of the evi-

dence to support the attempted murder conviction by these points, and we will address the points accordingly.

**2.** The jury charge also mentions striking with the "foot" as an alternative, though medical testimony suggests that kicking would not alone have been sufficient to cause or threaten death in the present cases.

moreover, from the appellant's statement and the testimony of other witnesses that only one bat was used in the assault and that it must have been the "wooden" bat described by De La Garza. In addition, we may also infer from common knowledge of the terms used, that a wooden baseball bat is a form of wooden stick. The evidence is therefore sufficient to show that the bat used by the appellant was a "wooden stick" as alleged in the indictment and carried over into the jury charge.

Appellant also complains, however, that he cannot be held responsible for his companions' acts merely because he knew of the crimes, was present, and swung the bat at each victim.[3] He further contends that the record supports the reasonable inference that the criminal conduct occurred after he left the scene, and he therefore cannot be held responsible for subsequent criminal conduct without his knowledge or intent.

■ Under Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974), a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See Beier v. State*, 687 S.W.2d 2 (Tex.Crim.App.1985).

■ While the presence of the accused at the scene of the crime is not alone sufficient to prove that person is a party to the crime, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App.1987); *Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App.1985); *Ex parte Prior*, 540 S.W.2d 723, 727 (Tex.Crim.App.1976). In determining whether the accused participated as a party, the trial court may look to

events before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App.1985); *Prior*, 540 S.W.2d at 727; *Bush v. State*, 506 S.W.2d 603, 605 (Tex.Crim.App.1974).

■ Appellant's own statement indicates his active participation in a common plan to attack the victims with deadly force. From the group's initial decision to start a fight, appellant identified himself with those who "all started saying let's go back and beat him up." Appellant followed the group to the scene with the knowledge that a baseball bat and a car jack were being taken along for use against the victims. Once hostilities broke out between the Villanuevas and the group, appellant actively participated and assisted in the fight by his use of the baseball bat to inflict blows that at least contributed to the victims' death and injuries. Finally, although appellant's flight from the scene may have slightly preceded that of the other members of his group, he was clearly an active participant in the fight and the use of deadly force against the Villanuevas, as he admits in his statement by reference to the victims as men that "we beat up." We hold that the evidence is sufficient to show that appellant participated as a party in the murder and attempted murder of the Villanuevas. Appellant's first through twentieth points of error are overruled.

By points of error twenty-one and twenty-two appellant challenges the sufficiency of the evidence to support findings that he used a deadly weapon, in the form of a wooden stick or car jack, during the commission of the offenses, under the probation limiting provisions of Tex.Code Crim. Proc.Ann. art 42.12 § 3g(a)(2) (Vernon Supp.1990). Appellant complains that

---

**3.** Viewed in the light most favorable to the State, the evidence suggests that the appellant himself struck both victims with the baseball bat. Jose Luis Villanueva identified appellant from a photograph as the one who struck him repeatedly with the baseball bat. In addition, appellant's own statement suggests that he struck to the ground the second man to ap-

proach the group by a blow to his head with the baseball bat. Jose Luis Villanueva testified that he approached the group that night with his brother Jaime following, which would place murder victim Jaime as the second man to which appellant referred, the one he admitted striking with the baseball bat.

there is no evidence that he personally struck either victim with a wooden stick or a tire jack.

The State concedes that, when a defendant is convicted as a party, there must be a specific finding that he himself used or exhibited a deadly weapon. *Reyes v. State,* 741 S.W.2d 414, 433 (Tex.Crim. App.1987); *Travelstead v. State,* 693 S.W.2d 400, 402 (Tex.Crim.App.1985). Use of a deadly weapon consists of any employment of a deadly weapon that facilitates the associated felony. *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989).

As we stated above, there is evidence that appellant himself used a wooden stick in the form of a baseball bat to strike both of the victims during the commission of the offenses. Moreover, even if the evidence were insufficient to show that appellant himself struck both victims with the baseball bat, the evidence still clearly shows that appellant himself used the bat as a weapon in the fight in which he participated, and that its use therefore facilitated the commission of the offenses against the victims. *See Patterson,* 769 S.W.2d at 941. Appellant's twenty-first and twenty-second points are overruled.

The judgments of the trial court are AFFIRMED.