In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00091-CR


______________________________




JOSE MARTIN GUEVARA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 24950




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury convicted Jose Martin Guevara of aggravated robbery with a deadly weapon, and the
jury assessed punishment at twenty-five years' imprisonment. Guevara now appeals his conviction,
challenging the legal and factual sufficiency of the evidence to prove the aggravating element of
aggravated robbery charge (i.e., that he used or exhibited a deadly weapon during the commission
of the offense (1)). We affirm the judgment.

I. FACTUAL BACKGROUND

 Teresa Burkett was working alone in the small branch office of American National Bank in
Greenville, Texas, on the morning of January 3, 2008, when Guevara entered through the back door. 
Guevara provided janitorial services to the bank, and thus was in possession of a key to the bank. 
It was this key that enabled Guevara to enter the bank from the back door, unbeknownst to Burkett. 
Guevara entered the lobby area of the bank clad in a warm-up jacket with a hood and wearing
sunglasses with a white cloth serving as a mask over the bottom half of his face. He then walked
behind the service counter where Burkett was working, and she told him that he was not supposed
to be there. It was not until Burkett had admonished Guevara that she noticed he was carrying what
she then believed to be an ice pick in his right hand, and she immediately sensed that things were
not as they should be. Shortly after he walked behind the service counter, he took possession of the
panic button (the silent alarm with which a bank teller could alert police of the existence of a
robbery). Guevara advanced toward Burkett with the ice pick in his hand and gestured toward her;
she was frightened. After Guevara removed the plastic trash liner from the trash can and placed
$26,007.00 in cash from the cash drawer in the plastic liner sack, Guevara took Burkett to a back
room and tied her thumbs together behind her back. Guevara then absconded with the money and
Burkett contacted the police.II. ANALYSIS 

 Guevara challenges the legal and factual sufficiency of the evidence to sustain his aggravated 
robbery conviction. Guevara committed aggravated robbery if he committed "robbery as defined in
Section 29.02, and he . . . use[d] or exhibit[ed] a deadly weapon . . . ." See Tex. Penal Code Ann.
§ 29.03(a) (Vernon 2003). A "deadly weapon" is defined as: 

 (A) a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or 


 (B) anything that in the manner of its use or intended use is capable of causing death 

 or serious bodily injury.


Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009).

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most
favorable to the prosecution and determine whether, based on that evidence and reasonable inferences
therefrom, any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Roberts v. State,
273 S.W.3d 322, 326 (Tex. Crim. App. 2008). In other words, if a reasonable trier of fact could have
found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed
legally sufficient. Young v. State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000). 

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light instead
of the light most favorable to the verdict. We determine whether the evidence supporting the verdict
is either too weak to support the fact-finder's verdict, or, considering conflicting evidence, is so
outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly
wrong and manifestly unjust. Laster, 275 S.W.3d at 518; Lancon v. State, 253 S.W.3d 699, 705 (Tex.
Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Finally, in
conducting a factual sufficiency analysis, this Court may not intrude upon the jury's role as the sole
judge of the credibility and weight of witness testimony. Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). 

 In addition, we are instructed to employ a hypothetically correct jury charge analysis to
evaluate both the legal and factual sufficiency of evidence. Grotti v. State, 273 S.W.3d 273, 281
(Tex. Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories
of liability, and adequately describes the particular offense for which the defendant was tried. 
Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997). The indictment in this case charged Guevara with using and exhibiting,
while in the course of committing theft, a deadly weapon, namely: an ice pick, and/or screwdriver,
and/or a pointed object with a handle, and intentionally and knowingly placing Burkett in fear of
imminent bodily injury or death. 

 Guevara focuses his argument on the adequacy of the proof that he used a "deadly weapon"
in the course of the robbery and on the question of whether the evidence shows he used or exhibited
the weapon during the course of the robbery. 

 On this issue, Burkett testified that Guevara used an ice pick in the robbery. When Guevara
walked behind the service counter of the bank where Burkett was seated, Burkett noticed what she
believed was an ice pick in his hand which was held in an upward position. The object held by
Guevara was described by Burkett as being sharp and having a wooden handle. After Guevara made
his way behind the service counter with the ice pick, Guevara appeared to mumble and Burkett
understood only the word "money." After Guevara took the money from the cash drawer, he put it
in a bag and then directed Burkett down the hall to the server room. The room was locked and
Burkett had to return to the counter area to get her keys. Guevara then maneuvered Burkett back to
the server room. Burkett testified that she felt threatened and afraid with Guevara behind her carrying
an ice pick and that she did not know what was going to happen. At that point, Guevara placed
Burkett's hands behind her back and tied her thumbs together. After Guevera left, Burkett called the
police. 

 Investigator Warren Mitchell of the Greenville Police Department conducted the investigation
of the robbery. When he arrived at the bank, Burkett was upset and visibly shaking. 

 Guevara was arrested on the day of the robbery, was admonished concerning his rights, and
was taken into custody by Mitchell for questioning. (2) A videorecording of the interview was admitted
into evidence at trial without objection and played for the jury. (3) During that interview, Guevara
admitted that he used a screwdriver (4) as a weapon in the robbery. The content of the statement was
verified by Rodriguez. 

 Officer Chris Neaville with the Greenville Police Department was on patrol the day of the
robbery and responded to the call. Neaville testified that he has been a police officer for the past
twelve years and has had the opportunity to investigate violent crimes. In Neaville's opinion, an ice
pick or a screwdriver is capable of causing serious bodily injury or death.

 Guevara's own admission on the day of the robbery was that he used a screwdriver as a
weapon in the robbery, along with Burkett's testimony that Guevara held an ice pick in his right hand
establishes the fact that Guevara used or exhibited such an item during the robbery. The sole question
before this Court is whether a screwdriver qualifies as a "deadly weapon" under Section 1.07(a)(17)
of the Texas Penal Code. Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009).

 Several factors are involved in the determination of whether an object is capable of causing 
death or serious bodily injury: (1) the physical proximity between the victim and the object; (5) (2) the
threats or words used by the assailant; (6) (3) the size and shape of the weapon; (7) (4) the weapon's ability
to inflict death or serious bodily injury; (8) and (5) the manner in which the defendant used the weapon. (9) 
No one factor is determinative, and each case must be examined on its own facts. Brown v. State, 716
S.W.2d 939, 946-47 (Tex. Crim. App. 1986). 

 Guevara argues that the foregoing factors, when applied to this case, point to the conclusion
that the screwdriver was not used as a deadly weapon. There is no evidence that Guevara threatened
to kill Burkett. While Burkett testified that the screwdriver was held in an upright position in front
of her, the screwdriver was never pressed against Burkett's body during the robbery. Moreover, there
was testimony from Burkett describing the screwdriver as sharp and as having a wooden handle, but
the description is scant and the screwdriver was not in evidence, as it was not recovered during the
course of the investigation. (10) These items militate in favor of a determination that the screwdriver
was not a deadly weapon in this circumstance. 

 On the other hand, Burkett testified that she clearly saw the weapon in Guevara's right hand
and she believed that weapon to be an ice pick. Burkett felt threatened and was scared. She felt as
if she was in danger, that the weapon was a threat to her and that at any moment she could have been
injured. Burkett remained calm and did as she was told in order to survive the ordeal. 

 The statute provides that "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury" is a deadly weapon. (11) The provision's plain language does
not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon
if the actor intends a use of the object in a manner in which it would be capable of causing death or
serious bodily injury. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Here, there is
evidence that the screwdriver was held in an upright manner in front of Burkett and that Guevara
carried the screwdriver with him during the course of the robbery. The jury could reasonably infer
from this evidence that Guevara's purpose in carrying the screwdriver during the course of the robbery
evidenced an intention to use it in a manner in which it would be capable of causing death or serious
bodily injury. While expert testimony is no longer required, (12) Officer Neaville's testifying to the
capability of a screwdriver to cause serious bodily injury or death is in support of the jury's findings. 
 Admittedly, a screwdriver is not an inherently dangerous object. However, when utilized in
a manner which causes or has the potential to cause death or serious bodily injury, objects which are
not inherently dangerous may be found to be deadly weapons under Section 1.07(a)(17)(B) of the
Texas Penal Code. See Hill v. State, 913 S.W.2d 581 (Tex. Crim. App. 1996) (the use of belts,
chains, and locks to prevent a child from eating constituted the use of a deadly weapon in denying
food to the child); Stanul v. State, 870 S.W.2d 329 (Tex. App.--Austin 1994, pet. dism'd, pet ref'd
[2 pets.]) (defendant used floor as deadly weapon by striking victim's head against it); Lozano v. State,
860 S.W.2d 152 (Tex. App.--Austin 1993, pet. ref'd) (defendant used lighter as deadly weapon by
using it to start a fire); Enriquez v. State, 826 S.W.2d 191 (Tex. App.--El Paso 1992, no pet.)
(defendant used soft drink bottle as deadly weapon by striking victim with it); Escobar v. State, 799
S.W.2d 502 (Tex. App.--Corpus Christi 1990, pet. ref'd) (baseball bat used to bludgeon victim
constituted deadly weapon); Cooper v. State, 773 S.W.2d 749 (Tex. App.--Corpus Christi 1989, no
pet.) (defendant used hands as deadly weapon by dropping infant to floor); Rice v. State, 771 S.W.2d
599 (Tex. App.--Houston [14th Dist.] 1989, no pet.) (defendant used gasoline as deadly weapon by
pouring it over victim and then igniting it); Johnson v. State, 770 S.W.2d 72 (Tex. App.--Texarkana
1989), aff'd, 815 S.W.2d 707 (Tex. Crim. App. 1991) (defendant used hands and feet as deadly
weapons by beating and kicking victim to death); Roberts v. State, 766 S.W.2d 578 (Tex.
App.--Austin 1989, no pet.) (defendant used truck as deadly weapon in colliding with car, injuring
and killing occupants); Harper v. State, 753 S.W.2d 516 (Tex. App.--Houston [1st Dist.] 1988, pet.
ref'd) (defendant used rope or cord as deadly weapon by tying it around victim's neck, restricting her
breathing); Shockley v. State, 747 S.W.2d 470 (Tex. App.--Houston [1st Dist.] 1988, no pet.)
(defendant used fabric or hands as deadly weapon by strangling victim); Cervantes v. State, 706
S.W.2d 685 (Tex. App.--Houston [14th Dist.] 1986, no pet.) (defendant used board as deadly weapon
by striking victim with it); Garza v. State, 695 S.W.2d 726 (Tex. App.--Dallas 1985), aff'd, 725
S.W.2d 256 (Tex. Crim. App. 1987) (by placing broken metal belt buckle in his hand when striking
at officer, defendant used the belt buckle as deadly weapon); Terry v. State, 672 S.W.2d 236 (Tex.
App.--Waco 1983) (defendant used plastic bag as weapon by placing it over victim's head,
suffocating her), rev'd in part on other grounds, 692 S.W.2d 496 (Tex. Crim. App. 1985).

 The objects described in the foregoing cases, while not inherently dangerous, were found to
be deadly weapons based upon the manner in which they were used. This concept extends to the
manner in which an object is used, even when, as in this case, the object is not utilized to cause actual
injury. Illustrative of this principle is the case of Adame v. State, 69 S.W.3d 581 (Tex. Crim. App.
2002), in which the question before the trial court was whether there was evidence that the defendant
displayed a BB gun to the convenience store clerk and whether there was sufficient evidence that the
gun was capable of causing serious bodily injury if pointed and fired at someone to support the jury's
deadly weapon finding. The court determined that the significant issue was whether the BB gun was
capable of causing serious bodily injury. Id. at 582 (citing McCain, 22 S.W.3d at 503) ("an object
is a deadly weapon if the actor intends a use of the object in which it would be capable of causing
death or serious bodily injury"). Thus, even though the BB gun was unloaded at the time of the
robbery, the court determined that the evidence in support of the deadly weapon finding was sufficient
because the State proved that the weapon used was capable of causing serious bodily injury or death
in its use or intended use. Id. at 582.

 There is not a need to show an intent on the part of the actor to use an object as a deadly
weapon. Sierra v. State, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Rather, it is proper to make
a two-fold evaluation: (1) there should be an evaluation of the manner in which an object was used
during the commission of a felony and (2) it should be considered whether during commission of the
felony, the object in question was capable of causing death or serious bodily injury. Id. at 255. 

 In the case at bar, there is evidence that the screwdriver was held up in front of Burkett; a
description is provided by Burkett of the screwdriver (then believed by her to be an ice pick); 
Guevara admits to using the screwdriver in the course of the robbery; Burkett was scared and felt
threatened; and Burkett was visibly shaking and upset after the robbery. In addition, there is
testimony regarding the ability of a screwdriver to inflict harm or death. It is the province of the jury
to weigh the evidence and arrive at the truth. The foregoing evidence is both legally and factually
sufficient to allow a jury to conclude that the manner in which Guevara used the screwdriver during
the robbery rendered it capable of causing death or serious bodily injury. The evidence to the contrary
is not so strong as to require a different determination. See Nash v. State, 175 S.W.3d 427, 430 (Tex.
App.--Texarkana 2005, pet. ref'd).

III. CONCLUSION

 We conclude that the evidence at trial was legally and factually sufficient to support the jury's
verdict convicting Guevara of aggravated robbery. Accordingly, we affirm the trial court's judgment.

 


 Bailey C. Moseley

 Justice


Date Submitted: October 5, 2009

Date Decided: October 28, 2009


Do Not Publish 
1. See Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).
2. Because Guevara speaks primarily Spanish, Spanish-speaking officer Ramon Rodriguez with
the Greenville Police Department assisted with the interview and acted as a translator. 
3. Also introduced into evidence at trial was the videorecording of the robbery, as captured on
the bank's video recording equipment. This recording reveals an object in Guevara's right hand, but
it is not clear what the object is. 
4. Burkett identified the object in Guevara's hand as an ice pick, but Guevara admitted to
having a screwdriver. For clarity, we will refer to the weapon in question as a screwdriver. 
5. Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g); Nash v. State,
175 S.W.3d 427 (Tex. App.--Texarkana 2005, pet. ref'd).
6. Williams v. State, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979).
7. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983).
8. Id.
9. Id.
10. We note that introducing the weapon in evidence assists the jury, but the jury may
determine the weapon was capable of causing death or serious bodily injury even if it is not in
evidence. Charleston v. State, 33 S.W.3d 96, 100 (Tex. App.--Texarkana 2000, pet. ref'd).
11. Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).
12. English v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983).



s, and returned those that had been delivered to him, when his lawyer
advised him of his right to sue his employer for damages at common law. See id. at 620. The
employer contended that the employee was bound by the release of his common-law action and
election to accept voluntary compensation benefits when he signed and ratified by writing for such
payments and by accepting, endorsing, and cashing weekly compensation payments, each of which
showed on its face to have been tendered in payment of such voluntary compensation benefits. See
id. The Texas Supreme Court found that the actions of the employee in accepting payments did not
constitute ratification as a matter of law because the actions did not establish "that at the time of
accepting this compensation [the employee] was in possession of and acquainted with all of the facts
or that as a matter of law he knew his rights and privileges to accept or reject the benefits under the
voluntary compensation policy or to sue his employer at common law or to release him from
liability." Id. at 621. Without knowledge of those facts pertaining to his rights, ratification did not
occur. 

 Reyes is in exactly the same position as was the plaintiff in Leonard. Because of the fact
issue as to the validity of the waiver, summary judgment that he lost his common-law rights in their
entirety at the time he accepted and retained payment for medical expenses and disability payments
was improper. S&P's and Guerrero's summary judgment proof of ratification is that Reyes accepted
and retained payment for medical expenses and disability payments after having previously signed
the liability waiver. This evidence is insufficient to satisfy the summary judgment burden of proof
on knowledgeable ratification. S&P and Guerrero have failed to show any evidence that at the time
Reyes accepted plan benefits, he did so with the knowledge he had common-law rights that he would
waive by accepting such benefits. We cannot infer that Reyes had knowledge of the indemnity from
his having signed the release on his initial employment, because to do so would render the fair notice
requirements meaningless. The argument against estoppel fails for the same lack of knowledge on
Reyes' part. See Rourke v. Garza, 530 S.W.2d 794, 803 (Tex. 1975) ("It is essential to the
application of the doctrine of estoppel that the person claimed to be estopped have had knowledge
of all material facts at the time of the conduct alleged to constitute the basis of the estoppel."). 

 S&P and Guerrero contend that we should follow the general rule to which we referred in 
Amouri v. Southwest Toyota, Inc., 20 S.W.3d 165 (Tex. App.-Texarkana 2000, pet. denied), and
hold that Reyes was presumed to know and agree to the terms of the waiver agreement he signed. 
Amouri does not govern this case. It was a breach of contract case where the defendant defended on
a claim that he was fraudulently induced to execute the contract. Summary judgment evidence
showed that an automobile dealer misrepresented a transaction to Amouri. In our opinion, we stated
the general rule that parties are bound by the contracts they sign, but we held that rule inapplicable
to the facts in that case. Likewise, that general rule is inapplicable to a situation like we have here,
where an indemnitee is attempting to enforce an indemnification against its own negligence. If the
indemnity agreement fails to comply with the express negligence rule and the conspicuousness rule,
the indemnity provision may not be enforced against the indemnitor unless he is shown to have
actual knowledge of the indemnity provision. Dresser Industries, Inc. v. Page Petroleum, Inc., 853
S.W.2d at 508 n.2; Douglas Cablevision v. Southwestern Elec. Power Co., 992 S.W.2d at 510; U.S.
Rentals Mundy Serv. Corp., 901 S.W.2d at 793. That is the reason for the existence of the express
negligence rule and the conspicuousness rule-to bring home to the indemnitor the actual knowledge
that an indemnity against the indemnitee's own negligence is being imposed. To charge an
indemnitor with knowledge of such an indemnity agreement merely because the indemnity provision
is contained within an ordinary written agreement would defeat the purpose of the express
negligence and conspicuousness rules. This requirement of actual knowledge is well settled in this
kind of case and differs from the general rule relating to other kinds of contracts. Having shown
that the liability release at issue here was unenforceable as a matter of law, and that S&P and
Guerrero have failed to satisfy their burden of proof for summary judgment on their claims of
ratification and estoppel, we conclude that the trial court erred in granting summary





judgment. We reverse the judgment and remand this cause for further proceedings consistent with
this opinion.


 William J. Cornelius*

 Justice



Date Submitted: May 29, 2002

Date Decided: September 13, 2002


Publish


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.
1. Although the Cate court only expressly addressed the actual knowledge of the party against
whom the provision is to be enforced and the conspicuousness of the provision in question, see Cate
v. Dover Corp., 790 S.W.2d 559, 560 (Tex. 1990), the Dresser court appears to have broadened the
"actual knowledge" exception to cover both the express-negligence and conspicuousness
requirements. See Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993).