

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

———————————————

## No. 06-09-00091-CR

———————————————


JOSE MARTIN GUEVARA, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 24950


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A jury convicted Jose Martin Guevara of aggravated robbery with a deadly weapon, and the jury assessed punishment at twenty-five years' imprisonment. Guevara now appeals his conviction, challenging the legal and factual sufficiency of the evidence to prove the aggravating element of aggravated robbery charge (i.e., that he used or exhibited a deadly weapon during the commission of the offense[1]). We affirm the judgment.

## I.      FACTUAL BACKGROUND

Teresa Burkett was working alone in the small branch office of American National Bank in Greenville, Texas, on the morning of January 3, 2008, when Guevara entered through the back door. Guevara provided janitorial services to the bank, and thus was in possession of a key to the bank. It was this key that enabled Guevara to enter the bank from the back door, unbeknownst to Burkett. Guevara entered the lobby area of the bank clad in a warm-up jacket with a hood and wearing sunglasses with a white cloth serving as a mask over the bottom half of his face. He then walked behind the service counter where Burkett was working, and she told him that he was not supposed to be there. It was not until Burkett had admonished Guevara that she noticed he was carrying what she then believed to be an ice pick in his right hand, and she immediately sensed that things were not as they should be. Shortly after he walked behind the service counter, he took possession of the panic button (the silent alarm with which a bank teller could alert police of the existence of a

---

[1]*See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003).

2

robbery).  Guevara advanced toward Burkett with the ice pick in his hand and gestured toward her; she was frightened.  After Guevara removed the plastic trash liner from the trash can and placed $26,007.00 in cash from the cash drawer in the plastic liner sack, Guevara took Burkett to a back room and tied her thumbs together behind her back.  Guevara then absconded with the money and Burkett contacted the police.

## II.    ANALYSIS

Guevara challenges the legal and factual sufficiency of the evidence to sustain his aggravated robbery conviction.  Guevara committed aggravated robbery if he committed "robbery as defined in Section 29.02, and he . . . use[d] or exhibit[ed] a deadly weapon . . . ." *See* TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2003).   A "deadly weapon" is defined as:

> (A) a  firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2009).

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Roberts v. State*, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008).  In other words, if a reasonable trier of fact could have

3

found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed legally sufficient. *Young v. State*, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light instead of the light most favorable to the verdict. We determine whether the evidence supporting the verdict is either too weak to support the fact-finder's verdict, or, considering conflicting evidence, is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong and manifestly unjust. *Laster*, 275 S.W.3d at 518; *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Finally, in conducting a factual sufficiency analysis, this Court may not intrude upon the jury's role as the sole judge of the credibility and weight of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

In addition, we are instructed to employ a hypothetically correct jury charge analysis to evaluate both the legal and factual sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273, 281 (Tex. Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The indictment in this case charged Guevara with using and exhibiting, while in the course of committing theft, a deadly weapon, namely: an ice pick, and/or screwdriver,

4

and/or a pointed object with a handle, and intentionally and knowingly placing Burkett in fear of imminent bodily injury or death.

Guevara focuses his argument on the adequacy of the proof that he used a "deadly weapon" in the course of the robbery and on the question of whether the evidence shows he used or exhibited the weapon during the course of the robbery.

On this issue, Burkett testified that Guevara used an ice pick in the robbery. When Guevara walked behind the service counter of the bank where Burkett was seated, Burkett noticed what she believed was an ice pick in his hand which was held in an upward position. The object held by Guevara was described by Burkett as being sharp and having a wooden handle. After Guevara made his way behind the service counter with the ice pick, Guevara appeared to mumble and Burkett understood only the word "money." After Guevara took the money from the cash drawer, he put it in a bag and then directed Burkett down the hall to the server room. The room was locked and Burkett had to return to the counter area to get her keys. Guevara then maneuvered Burkett back to the server room. Burkett testified that she felt threatened and afraid with Guevara behind her carrying an ice pick and that she did not know what was going to happen. At that point, Guevara placed Burkett's hands behind her back and tied her thumbs together. After Guevera left, Burkett called the police.

Investigator Warren Mitchell of the Greenville Police Department conducted the investigation of the robbery. When he arrived at the bank, Burkett was upset and visibly shaking.

5

Guevara was arrested on the day of the robbery, was admonished concerning his rights, and was taken into custody by Mitchell for questioning.[2] A videorecording of the interview was admitted into evidence at trial without objection and played for the jury.[3] During that interview, Guevara admitted that he used a screwdriver[4] as a weapon in the robbery. The content of the statement was verified by Rodriguez.

Officer Chris Neaville with the Greenville Police Department was on patrol the day of the robbery and responded to the call. Neaville testified that he has been a police officer for the past twelve years and has had the opportunity to investigate violent crimes. In Neaville's opinion, an ice pick or a screwdriver is capable of causing serious bodily injury or death.

Guevara's own admission on the day of the robbery was that he used a screwdriver as a weapon in the robbery, along with Burkett's testimony that Guevara held an ice pick in his right hand establishes the fact that Guevara used or exhibited such an item during the robbery. The sole question before this Court is whether a screwdriver qualifies as a "deadly weapon" under Section 1.07(a)(17) of the Texas Penal Code. TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2009).

---

[2]Because Guevara speaks primarily Spanish, Spanish-speaking officer Ramon Rodriguez with the Greenville Police Department assisted with the interview and acted as a translator.

[3]Also introduced into evidence at trial was the videorecording of the robbery, as captured on the bank's video recording equipment. This recording reveals an object in Guevara's right hand, but it is not clear what the object is.

[4]Burkett identified the object in Guevara's hand as an ice pick, but Guevara admitted to having a screwdriver. For clarity, we will refer to the weapon in question as a screwdriver.

6

Several factors are involved in the determination of whether an object is capable of causing death or serious bodily injury: (1) the physical proximity between the victim and the object;[5] (2) the threats or words used by the assailant;[6] (3) the size and shape of the weapon;[7] (4) the weapon's ability to inflict death or serious bodily injury;[8] and (5) the manner in which the defendant used the weapon.[9] No one factor is determinative, and each case must be examined on its own facts. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986).

Guevara argues that the foregoing factors, when applied to this case, point to the conclusion that the screwdriver was not used as a deadly weapon. There is no evidence that Guevara threatened to kill Burkett. While Burkett testified that the screwdriver was held in an upright position in front of her, the screwdriver was never pressed against Burkett's body during the robbery. Moreover, there was testimony from Burkett describing the screwdriver as sharp and as having a wooden handle, but the description is scant and the screwdriver was not in evidence, as it was not recovered during the

---

[5] *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g); *Nash v. State*, 175 S.W.3d 427 (Tex. App.—Texarkana 2005, pet. ref'd).

[6] *Williams v. State*, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979).

[7] *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983).

[8] *Id.*

[9] *Id.*

course of the investigation.[10] These items militate in favor of a determination that the screwdriver was not a deadly weapon in this circumstance.

On the other hand, Burkett testified that she clearly saw the weapon in Guevara's right hand and she believed that weapon to be an ice pick. Burkett felt threatened and was scared. She felt as if she was in danger, that the weapon was a threat to her and that at any moment she could have been injured. Burkett remained calm and did as she was told in order to survive the ordeal.

The statute provides that "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury" is a deadly weapon.[11] The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in a manner in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Here, there is evidence that the screwdriver was held in an upright manner in front of Burkett and that Guevara carried the screwdriver with him during the course of the robbery. The jury could reasonably infer from this evidence that Guevara's purpose in carrying the screwdriver during the course of the robbery evidenced an intention to use it in a manner in which it would be *capable* of causing death or serious

---

[10]We note that introducing the weapon in evidence assists the jury, but the jury may determine the weapon was capable of causing death or serious bodily injury even if it is not in evidence. *Charleston v. State*, 33 S.W.3d 96, 100 (Tex. App.—Texarkana 2000, pet. ref'd).

[11] TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2009).

bodily injury. While expert testimony is no longer required,[12] Officer Neaville's testifying to the capability of a screwdriver to cause serious bodily injury or death is in support of the jury's findings.

Admittedly, a screwdriver is not an inherently dangerous object. However, when utilized in a manner which causes or has the potential to cause death or serious bodily injury, objects which are not inherently dangerous may be found to be deadly weapons under Section 1.07(a)(17)(B) of the Texas Penal Code. *See Hill v. State*, 913 S.W.2d 581 (Tex. Crim. App. 1996) (the use of belts, chains, and locks to prevent a child from eating constituted the use of a deadly weapon in denying food to the child); *Stanul v. State*, 870 S.W.2d 329 (Tex. App.—Austin 1994, pet. dism'd, pet ref'd [2 pets.]) (defendant used floor as deadly weapon by striking victim's head against it); *Lozano v. State*, 860 S.W.2d 152 (Tex. App.—Austin 1993, pet. ref'd) (defendant used lighter as deadly weapon by using it to start a fire); *Enriquez v. State*, 826 S.W.2d 191 (Tex. App.—El Paso 1992, no pet.) (defendant used soft drink bottle as deadly weapon by striking victim with it); *Escobar v. State*, 799 S.W.2d 502 (Tex. App.—Corpus Christi 1990, pet. ref'd) (baseball bat used to bludgeon victim constituted deadly weapon); *Cooper v. State*, 773 S.W.2d 749 (Tex. App.—Corpus Christi 1989, no pet.) (defendant used hands as deadly weapon by dropping infant to floor); *Rice v. State*, 771 S.W.2d 599 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (defendant used gasoline as deadly weapon by pouring it over victim and then igniting it); *Johnson v. State*, 770 S.W.2d 72 (Tex. App.—Texarkana 1989), *aff'd*, 815 S.W.2d 707 (Tex. Crim. App. 1991) (defendant used hands and feet as deadly

---

[12]*English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983).

weapons by beating and kicking victim to death); *Roberts v. State*, 766 S.W.2d 578 (Tex. App.—Austin 1989, no pet.) (defendant used truck as deadly weapon in colliding with car, injuring and killing occupants); *Harper v. State*, 753 S.W.2d 516 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (defendant used rope or cord as deadly weapon by tying it around victim's neck, restricting her breathing); *Shockley v. State*, 747 S.W.2d 470 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (defendant used fabric or hands as deadly weapon by strangling victim); *Cervantes v. State*, 706 S.W.2d 685 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (defendant used board as deadly weapon by striking victim with it); *Garza v. State*, 695 S.W.2d 726 (Tex. App.—Dallas 1985), *aff'd*, 725 S.W.2d 256 (Tex. Crim. App. 1987) (by placing broken metal belt buckle in his hand when striking at officer, defendant used the belt buckle as deadly weapon); *Terry v. State*, 672 S.W.2d 236 (Tex. App.—Waco 1983) (defendant used plastic bag as weapon by placing it over victim's head, suffocating her), *rev'd in part on other grounds*, 692 S.W.2d 496 (Tex. Crim. App. 1985).

The objects described in the foregoing cases, while not inherently dangerous, were found to be deadly weapons based upon the manner in which they were used. This concept extends to the manner in which an object is used, even when, as in this case, the object is not utilized to cause actual injury. Illustrative of this principle is the case of *Adame v. State*, 69 S.W.3d 581 (Tex. Crim. App. 2002), in which the question before the trial court was whether there was evidence that the defendant displayed a BB gun to the convenience store clerk and whether there was sufficient evidence that the gun was capable of causing serious bodily injury if pointed and fired at someone to support the jury's

10

deadly weapon finding. The court determined that the significant issue was whether the BB gun was capable of causing serious bodily injury. *Id*. at 582 (citing *McCain*, 22 S.W.3d at 503) ("an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury"). Thus, even though the BB gun was unloaded at the time of the robbery, the court determined that the evidence in support of the deadly weapon finding was sufficient because the State proved that the weapon used was capable of causing serious bodily injury or death in its use or intended use. *Id.* at 582.

There is not a need to show an intent on the part of the actor to use an object as a deadly weapon. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Rather, it is proper to make a two-fold evaluation: (1) there should be an evaluation of the manner in which an object was used during the commission of a felony and (2) it should be considered whether during commission of the felony, the object in question was capable of causing death or serious bodily injury. *Id.* at 255.

In the case at bar, there is evidence that the screwdriver was held up in front of Burkett; a description is provided by Burkett of the screwdriver (then believed by her to be an ice pick); Guevara admits to using the screwdriver in the course of the robbery; Burkett was scared and felt threatened; and Burkett was visibly shaking and upset after the robbery. In addition, there is testimony regarding the ability of a screwdriver to inflict harm or death. It is the province of the jury to weigh the evidence and arrive at the truth. The foregoing evidence is both legally and factually sufficient to allow a jury to conclude that the manner in which Guevara used the screwdriver during

11

the robbery rendered it capable of causing death or serious bodily injury. The evidence to the contrary is not so strong as to require a different determination. *See Nash v. State*, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet. ref'd).

## III. CONCLUSION

We conclude that the evidence at trial was legally and factually sufficient to support the jury's verdict convicting Guevara of aggravated robbery. Accordingly, we affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    October 5, 2009
Date Decided:    October 28, 2009

Do Not Publish